# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## No. 97-20442
_____

SYLVIA SANTOS WILLIAMS; ET AL.

Plaintiffs,

DORIS GILBEATH; ET AL.

Intervenors-Plaintiffs,

ELNORA MAE CLEMENTS; SANDRA EARLENE DODSON,

Intervenors-Plaintiffs-Appellants,

versus

TODD SHIPYARDS CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-95-CV-4592)
_____

July 21, 1998

Before BARKSDALE, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal presents only one issue:  whether Todd Shipyards Corporation established jurisdiction in district court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), concerning an action for gross negligence filed in Texas state court.  We **AFFIRM**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

From 1939 to 1951, Earl W. Clements was employed as a boilermaker by Todd in its Galveston, Texas, shipyard. He died in 1995, at age 87, from pulmonary asbestosis, which he allegedly acquired from exposure to asbestos products while so employed.

Todd's Galveston shipyard repaired, refitted, and converted vessels. Prior to the United States entering World War II, Todd did both commercial work for private parties and contract work for the United States Maritime Commission. After the United States entered the war, Todd worked almost exclusively under government contract on ships owned or operated by the Navy, Army, or United States Maritime Commission.

In this regard, all work performed on the vessels was subject to specifications, as well as health and safety standards, issued by the Government. Additionally, government inspectors monitored and inspected the work done on the ships and materials used. And, upon completion of a vessel, the Government conducted dock and sea trials to ensure that the work conformed to contract specifications.

Suit was filed against Todd in 1994 in Texas state court. In August 1995, there were four interventions, including by Clements' widow and daughter (Appellants). Each intervention concerned different employment periods, occupations, and diseases. Two of the intervenor groups, including Appellants, alleged asbestos exposure between 1939 and 1968.

In September 1995, Todd removed all of the claims to federal court. With regard to Appellants, Todd removed pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

The plaintiffs moved to remand, contending that the district court lacked jurisdiction because: the cases arose under the Texas Workers' Compensation Act and were non-removable under 28 U.S.C. § 1445(c); Todd had failed to establish jurisdiction under § 1442(a)(1) as to Appellants and another intervenor; and Todd had failed to state a basis for removal as to the original plaintiffs and other intervenors. The district court denied the remand motion as it related to the Appellants and another intervenor, ruling jurisdiction had been established under § 1442(a)(1).

As to Appellants, Todd then successfully moved for summary judgment on the basis that their claims were discharged by Todd's bankruptcy.

## II.

At issue is only whether the district court erred in refusing to remand. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), permits removal by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office...." We review *de novo* the denial of a remand motion. *See, e.g., **Sherrod v. American Airlines, Inc.***, 132 F.3d 1112, 1117 (5th Cir. 1998); ***Allen v. R&H Oil & Gas Co.***, 63 F.3d 1326, 1336 (5th Cir. 1995).

The Supreme Court, in one of its many examinations of §
1442(a) or its predecessors, has stated that the purpose of the
federal officer removal statute is found in the notion that

> the Federal Government can act only through
> its officers and agents, and they must act
> within the States.  If, when thus acting, and
> within the scope of their authority, those
> officers can be arrested and brought to trial
> in a State court, for an alleged offense
> against the law of the State, yet warranted by
> the Federal authority they posses, and if the
> general government is powerless to interfere
> at once for their protection,—if their
> protection must be left to the action of the
> State court,—the operations of the general
> government may at any time be arrested at the
> will of one of its members.

*Mesa v. California*, 489 U.S. 121, 126 (1989) (quoting *Tennessee v.
Davis*, 100 U.S. 257, 263 (1879)).

Similarly, our court has stated that "the purpose of the
[federal officer] removal statute is to prevent federal officers *or
persons acting under their direction* from being tried in state
court for acts done within the scope of their federal employment."
*Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 58 (5th
Cir.), *cert. denied*, 422 U.S. 1043 (1975) (emphasis added).
*Peterson* noted that § 1442(a)(1)'s scope is not narrow, but rather
"[a]t the very least, it is broad enough to cover all cases where
federal officers can raise a *colorable* defense arising out of their
duty to enforce federal law." *Id.* (emphasis added).

Pursuant to its plain language, the federal officer removal
statute requires Todd to demonstrate that:  (1) it is a "person",
(2) asserting a colorable claim to a federal defense, and (3) there
is a causal nexus between the claims asserted by the plaintiff and

- 4 -

the acts performed under color of federal office. *See **Mesa***, 489 U.S. at 125, 129, 131. For this three prong test, Appellants' do not dispute that Todd is a "person" within the meaning of § 1442(a)(1). Rather, they contend that Todd failed to satisfy the second and third prongs.

A.

In its removal notice, and concerning the second prong for § 1442(a)(1) removal, Todd stated that it raised a colorable claim to a federal defense by intending to rely on the government contractor defense, as set forth in ***Boyle v. United Technologies Corp.***, 487 U.S. 500 (1988). That "defense ... generally immunizes government contractors from civil liability arising out of the performance of federal procurement contracts." ***Bailey v. McDonnell Douglas Corp.***, 989 F.2d 794, 797 (5th Cir. 1993). The ***Boyle*** government contractor defense provides:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) *the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States*.

***Boyle***, 487 U.S. at 512 (emphasis added).

Concerning this defense, Appellants assert only that Todd failed to establish the third element. Restated, Appellants claim that Todd did not establish that it warned the Government about the dangers of asbestos that were known to Todd, but not known to the Government. Regarding this third element, ***Boyle*** stated: "The third

condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability."  *Id.* at 512.

As discussed, the removing party is required to only raise a "colorable" claim to a federal defense.  In other words, for removal purposes, the party is not required to prove success on the defense.  *See **Mesa***, 489 U.S. at 133; ***Magnin v. Teledyne Continental Motors,*** 91 F.3d 1424, 1427 (11th Cir. 1996) ("defense need only be plausible; its ultimate validity is not to be determined at the time of removal."); ***Jamison v. Wiley***, 14 F.3d 222, 238 (4th Cir. 1994) ("defendant need not prove that he will actually prevail on his federal immunity defense in order to obtain removal").  This is because, as the Court has stated, "one of the most important reasons for removal is to have the validity of the defense of official immunity *tried* in a federal court." ***Mesa***, 489 U.S. at 133 (emphasis added).  Consequently, in that this appeal concerns *only* the removal, our focus is *not* on whether Todd would have succeeded at trial on the **Boyle** defense, but only on whether, for removal purposes, Todd raised a "colorable" claim to it.

In response to Appellants' remand motion, Todd included the following:  an affidavit from a former Todd employee discussing the nature of Todd's work during the World War II time period and the level of government supervision and direction; an index to the "Specifications For The Conversion Of Hull No. MCE-20 Into A

- 6 -

Training Ship", issued by the United States Maritime Commission in January 1942; an index to the Gulf Coast Safety Conference from December 1943, sponsored by the United States Maritime Commission and the United States Navy; and a document entitled "Minimum Standards for the Control of Health in Contract Shipyards of Maritime Commission and Navy" (Minimum Standards). The latter provides detailed government information regarding exposure to asbestos.

For example, the Minimum Standards has a section on the recommended respiratory protective equipment for shipyards, which advises that, in order to provide protection from asbestos dust, an airline respirator and dust respirator are needed. Moreover, a section entitled "*A Guide for Prevention of Industrial Disease in Shipyards*" lists asbestosis as one of the seven common types of disease. The document states that asbestosis is associated with the tasks of handling, sawing, cutting, molding, and welding rod salvage. In that regard, in order for those tasks to be performed safely, segregation of dusty work, special ventilation, the wearing of respirators, and periodic medical examinations were recommended.

The Minimum Standards also includes detailed information regarding ventilation standards within shipyards. In sum, it more than reveals an awareness by the Government of the hazards of asbestos.

As discussed, the government contractor defense requires, *inter alia*, that the contractor inform the Government of any dangers in the use of equipment that are known to the contractor,

*but not known to the Government.* **Boyle**, 487 U.S. at 512. The evidence presented by Todd establishes that, during the World War II time period, the Government knew of the dangers of asbestos. At the very least, such evidence establishes a "colorable" claim to the government contractor defense, sufficient for the second prong of the three prong test for § 1442(a)(1) removal.

B.

As discussed, the third — and only other contested — requirement for Todd's § 1442(a)(1) removal is to demonstrate a causal nexus between the claims asserted in this action by the Appellants (to include Clements' exposure to asbestos) and the acts performed by Todd under color of federal office. **Mesa**, 489 U.S. at 131-32 (citing **Maryland v. Soper**, 270 U.S. 9, 33 (1926)). Appellants maintain that Todd failed to satisfy this third element, by asserting, erroneously, that Todd is required to prove that it *used asbestos at the direction of government officials*. Along this line, Appellants contend that Todd failed to produce evidence that direct federal orders or exact specifications called for its use.

In determining what level of government direction is required to satisfy the requisite causal nexus, we agree, of course, with the district court that "[t]he mere fact that a corporation participates in a regulated industry is insufficient to support removal, absent a showing that the particular conduct is closely linked to detailed and specific regulations." **Williams v. Todd Shipyards Corp**, No. H-95-4592, slip op. at 8 (S.D. Tex. April 2,

- 8 -

1996) (*citing* **Bakalis v. Crossland Sav. Bank**, 781 F. Supp. 140, 144-45 (E.D.N.Y. 1991)).

For example, our court has found § 1442(a)(1) removal proper when an action  was filed against a private bank serving military installations, where the bank operated only through powers enumerated in Treasury Department letters and filed monthly reports with that department.  **State of Tex. ex rel. Falkner v. National Bank of Commerce**, 290 F.2d 229 (5th Cir.), *cert. denied* 368 U.S. 832 (1961).  As another example, we upheld such removal in **Noble v. Employers Ins. of Wausa,** 555 F.2d 1257 (5th Cir. 1977), where suit was brought by a VA hospital patient against the insurer of a surgeon employed by the VA.  Our court found that the surgeon was a person acting under a federal officer, because he acted under the immediate supervision of the Administration of Veteran Affairs, which evaluated his performance and determined his working conditions.  **Id.** at 1258-59.

In sum, our decisions indicate that detailed supervision and/or direction by a federal official or authority is sufficient to satisfy the causal nexus prong.  *Accord* **Guillory v. Ree's Contract Service, Inc.**, 872 F. Supp. 344, 346 (S.D. Miss. 1994) (whether "defendant was 'acting under' a federal officer depends on the 'level of official control', ... [specifically] whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit."); **Fung v. Abex Corp.**, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ("control requirement can be satisfied by strong government

intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction'.").

In regard to the requisite causal nexus, Todd stated in its removal notice:

> Todd, within the relevant times asserted either (a) operated facilities under directives from United States Government officials, (b) built and/or repaired Navy and/or Governmental vessels under design and specification criteria established by a federal officer of the United States or an agency thereof, or person acting under him, (3) performed government work under the supervision of a federal officer of the United States or an agency thereof, or person acting under him, (4) operated under the supervision of a federal officer of the United States or an agency thereof, or person acting under him (5) performed work on government owned and operated property during all or part of the relevant times, and (6) *may have used asbestos insulation because it was the only commercially available insulation material which could be used to accomplish the process which was required by the federal officer.* Under such circumstances, Todd ... [was] under the supervision of a federal officer under Section 1442(a).

(Emphasis added.)

And, as noted, in responding to the remand motion, Todd presented, *inter alia*, the affidavit of a Todd employee from 1939 to 1983, concerning the Government's detailed supervision and direction:

> Todd performed the repairs according to specifications issued or approved by the Navy and/or Maritime Commission. The Navy and/or Maritime Commission inspectors were actually onboard the vessels while work was being done. The inspectors closely monitored and reviewed Todd's work to ensure that the specifications were followed and that the work was done to their satisfaction. The inspectors had the

power to change the way the work was done and to require it to be re-done. When a vessel was completed, the Navy and/or Maritime Commission conducted dock and sea trials to ensure that the work was done in conformity with specifications and to approve the results of the repair or refitting.

It is evident that, during World War II, the Government, through the United States Maritime Commission and the United States Navy, specifically controlled and directed Todd's work, including the use of asbestos. As discussed *supra*, it supervised Todd's performance at all relevant times and required Todd to construct and repair the vessels in accordance with contract specifications. Moreover, Navy and/or Maritime Commission inspectors were onboard the vessels while work was being done and had the power to change the manner in which it was performed. The Government also performed sea and dock trials to ensure that the vessels were completed according to the specifications.

None of the evidence presented by Todd states that the Government "directed" Todd to use asbestos. Presumably, such a directive would have been in the Specifications for Ship Conversion; but, Todd filed only the index to the document, which makes no mention of asbestos use. On the other hand, and as discussed, the Government gave detailed directions regarding the vessels and was more than well-aware of the dangers from asbestos use. In any event, to satisfy the causal nexus requirement, Todd is not required to produce evidence that the Government *directed* it to use asbestos. As shown, it is enough instead that the evidence

shows comprehensive and detailed direction and control by the Government.

Again, at the removal stage, Todd is not required to establish success on the merits. In other words, the removal proceeding is not a merits proceeding on whether Todd was directed by the Government to use asbestos. Instead, again, Todd is only required to show a causal connection between Appellants' claims concerning asbestos exposure and Todd's performance as a federal contractor. Needless to say, it has more than done so. In short, Todd has satisfied the causal nexus portion of the three prong test for § 1442(a)(1) removal.

III.

For the foregoing reasons, the judgment is

**AFFIRMED**.

DENNIS, Circuit Judge, dissenting,

I respectfully dissent.

Federal jurisdiction to permit removal of the present case from state court under 28 U.S.C. § 1442(a)(1) has not been established. Todd did not (1) allege a colorable federal defense or (2) demonstrate that it was acting under the direction of a federal officer when it engaged in the conduct that gave rise to plaintiff's state law cause of action.

1.

Removal of a state action by a federal officer or a person acting under a federal officer pursuant to 28 U.S.C. § 1442 (a)(1) "must be predicated on the allegation of a colorable defense." *Mesa v. California*, 489 U.S. 121, 129 (1989). Assertion of a colorable federal defense is more than a procedural requirement for removal; it is the very source of the court's constitutional jurisdiction over the claim. "[I]t is the raising of [the colorable federal defense] in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes." *Id.* at 136. The majority and the district court mistakenly found that Todd had alleged a colorable Government contractor defense.

The Supreme Court plainly stated that the Government contractor defense "shields contractors from tort liability for products manufactured for the Government in accordance with Government specifications, if the contractor warned the United States about any hazards known to the contractor but not to the

- 13 -

Government." *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996)(citing *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988)). The plaintiffs' state law action against Todd, however, falls outside the scope of that federal defense because it is based not on liability for products manufactured by Todd for the government but upon Todd's alleged gross negligence in not protecting its own employee from the hazards of products manufactured and supplied to Todd by third persons. Todd's potential federal Government contractor defense against liability to hypothetical plaintiffs who might claim to have been harmed by products manufactured by Todd for the government is plainly inapplicable and irrelevant to, and therefore not a colorable defense against, the plaintiffs' gross negligence action against Todd.

Moreover, there is no basis for extending the Government contractor defense to cover the present case. The narrow constitutional basis for judicial formulation of a Government contractor defense against liability for product design defects recognized in *Boyle v. United Technologies Corp.*, *supra*, provides no support for a judge-made rule immunizing contractors from liability for their grossly negligent acts or omissions in cases such as the one presented here.

The Supreme Court in *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78 (1938) held that: "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." In pronouncing that "[t]here is no

- 14 -

federal general common law," *id.*, the *Erie* Court rejected the notion that the grant of diversity jurisdiction to federal courts is itself authority to fashion rules of substantive law. Accordingly, "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in narrow areas [of uniquely federal interests]." *Texas Indust., Inc. V. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 641 (1981)(footnotes omitted).

The Supreme Court in *Boyle v. United Technologies Corp.*, *supra*, recognized a new category of "uniquely federal interests," *i.e.*, the Government's interest in the procurement of military equipment as affected by product design claims by third persons against government contractors. The new category was a synthesis drawn from two pre-existing categories, *viz.*, the interest in administering the obligations to and rights of the United States under its contracts and the interest in regulating the civil liability of federal officials for actions taken in the course of their duty.

In *Boyle*, however, the Court admonished: "That the procurement of equipment by the United States is an area of uniquely federal interest [] merely establishes a necessary, not a sufficient, condition for the displacement of state law. Displacement will occur only where . . . a 'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives' of federal legislation[.]" *Boyle*, 487 U.S. at

- 15 -

507 (footnote and citations omitted). The Court indicated that if the state law duty sought to be imposed upon the person contracting with the Government was either identical to or not contrary to the duty imposed by the Government contract, so that "[t]he contractor could comply with both its contractual obligations and the state-prescribed duty of care," state law would not generally be pre-empted. *Id.* at 509. On the other hand, in a situation such as that in the Boyle case itself, in which "the state-imposed duty of care . . . is precisely contrary to the duty imposed by the government contract" there can be, but not always is, a "'significant conflict' between the state law and a federal policy or interest." *Id.*

Ultimately, the Court decided that a "significant conflict" between federal interests and state law in the context of Government procurement can be identified and adjusted by the discretionary function exception to the Federal Tort Claims Act which excludes "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused," 28 U.S.C. § 2680(a). Applying this rule, the Court concluded that the selection of the appropriate design for military equipment to be used by the armed forces is a discretionary function, so that state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a "significant conflict" with federal policy and must be displaced.

In its stead, the Court adopted a federal common law rule of decision which had been formulated by the Fourth and Ninth Circuits: "Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

The claims to which Todd seeks to assert the federal Government contractor defense are state law claims for acts of gross negligence allegedly committed by Todd which caused the plaintiffs to sustain asbestos-related injuries while working at the Todd Shipyard. Specifically, the plaintiffs' complaint alleges that their employer, Todd Shipyards, failed to take adequate precautions necessary to maintain a safe workplace or to warn its employees of or to protect them from the hazards of exposure to asbestos products manufactured and supplied to Todd Shipyard by third persons.

Under the principles set forth by the Supreme Court in *Hercules* and *Boyle*, Todd failed to allege a federal Government contractor defense that is colorable, *i.e.*, plausible or superficially reasonable. The Government contractor defense shields contractors from tort liability for products manufactured for the Government in accordance with Government specifications, if the contractor warned the Government of hazards known to the

contractor but not to the Government. *Hercules*, 516 U.S. at 422. The Government contractor defense is not relevant, applicable, plausible, or colorable in the present case because the plaintiffs seek to hold Todd liable only for its grossly negligent employee management conduct, not for products manufactured by Todd for the Government. Moreover, in the present case, Todd failed to allege or demonstrate that a "significant conflict" exists with federal policy. Todd did not allege any facts demonstrating that it could not comply with both its contractual obligations and the state prescribed duty of care to avoid acts or omissions of gross negligence in the management of its employees. Consequently, the present case clearly does not involve the "significant conflict" that occurs when the operation of state law interferes with or threatens the Government's discretionary function in "the selection of the appropriate design for military equipment." *Boyle*, 487 U.S. at 511. Because no significant conflict exists, there is no justification for a displacement of state law, and the federal common law rule known as the Government contractor defense is clearly not applicable, plausible, or colorable.

2.

I also disagree with the majority's conclusion that Todd qualifies as a person "acting under" an officer of the United States.

Section 1442(a)(1) permits removal only for a person acting under a federal officer for acts under color of such office. As the majority notes, the Supreme Court has interpreted this to

- 18 -

require a showing of some causal nexus between what the defendant has done under official authority and the suit against the defendant. *Maryland v. Soper*, 270 U.S. 9, 33 (1926). In other words, the removing party must establish that it is being sued as a result of the acts it performed under federal control.

Todd is being sued for gross negligence and the claim is limited to failure to take adequate precautions in the workplace and failure to warn its employees of the hazards of asbestos. While Todd presented some evidence that shows that the government supervised and monitored the construction of its ships -- including evidence that the government provided design specifications, monitored product development, and tested the product --, Todd's evidence does not establish that the government exercised "detailed supervision and/or direction" over the working conditions at Todd Shipyard. The only evidence relating to workplace safety is a copy of government specifications setting out the "minimum standards" for on-site medical services, including a discussion about asbestos, and for safety supplies for employees working with hazardous materials, including asbestos. This evidence does not establish that the government prevented Todd from adopting more protective standards or that the government's degree of control was such that it, in effect, took over workplace safety. For these reasons I believe that Todd fails to demonstrate that it was acting under the direction of a federal officer when it engaged in the conduct that gave rise to the plaintiffs' cause of action.