# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30476

United States Court of Appeals
Fifth Circuit

**FILED**
June 19, 2015

Lyle W. Cayce
Clerk

MARY JANE WILDE,

Plaintiff - Appellee

v.

HUNTINGTON INGALLS, INCORPORATED, formerly known as Northrop Grumman Shipbuilding, Incorporated, formerly known as Northrop Grumman Ship Systems, Incorporated, formerly known as Avondale Industries, Incorporated, formerly known as Avondale Shipyards, Incorporated, formerly known as Avondale Marine Ways, Incorporated,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-1486

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

The Federal Officer Removal Statute, 28 U.S.C. § 1442, allows persons sued for conduct relating to their "act[ions] under color of [federal authority]"[1] to remove a state court case filed against them to federal court. If the district

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 28 U.S.C. § 1442(a)(1).

No. 15-30476

court remands the case back to state court, the court of appeals has jurisdiction to review the remand order.[2]

In this case, Huntington Ingalls, Inc. ("Huntington") removed an asbestos action to federal court under section 1442.  The district court remanded.  Huntington appealed, and now asks us to stay the remand order pending appeal.  After careful consideration, we decline to do so.

I.

In the 1940s, Percy Legendre, Sr., worked at Avondale Shipyard, which is now owned by Huntington.  He allegedly was exposed to asbestos, which was passed along to his daughter, Mary Jane Wilde ("Wilde").  She was diagnosed with terminal mesothelioma in 2013.

In July 2014, Wilde sued Huntington in Louisiana state court, alleging that the company had exposed her, through her father, to dangerous levels of asbestos.  She alleged various negligence and strict liability claims, but made no mention of any exposure her father had to federal facilities or vessels.[3]  The state court set a trial date of June 22, 2015.  On April 7, Wilde's expert gave Huntington pre-deposition "reliance materials," including specification sheets for two vessels built at Avondale under the direction of the United States Maritime Commission during the period where her father worked at the shipyard.[4]  After receiving these specifications, Huntington removed the case on May 5.

Once the case was in federal court, Wilde moved immediately to remand. The district court scheduled an expedited hearing, and remanded the case on May 21, concluding that Huntington had not shown a causal nexus between its actions undertaken under the color of law and Wilde's claims.  Huntington

---

[2] 28 U.S.C. § 1442(d).

[3] *See* Petition for Damages, at 2-4, ECF No. 1-1.

[4] *See* Notice of Removal, at 3, ECF No. 1.

No. 15-30476

appealed that same day and now asks us to stay the remand order pending appeal.[5]

## II.

## A.

We must consider four factors when deciding to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.[6]

A stay, we must note, "is not a matter of right, even if irreparable injury might otherwise result to the appellant."[7]

## B.

The Federal Officer Removal Statute provides that a civil action brought against "any person acting under [an officer of the United States]" may be removed to federal district court.[8]  These persons may include government contractors, so long as they were sued because of actions they took under federal direction.[9]

In our circuit, a defendant must satisfy three independent factors to remove: (1) "[t]he defendants must first demonstrate that they are 'persons' within the meaning of the statute," (2) "the defendants acted pursuant to a federal officer's directions and that a causal nexus exists between the

---

[5] Huntington moved to stay the order in district court, as required under Federal Rule of Appellate Procedure 8(a)(1)(A), which the district court denied.  *See* Order, ECF No. 32.

[6] *Planned Parenthood of Greater Tex. Surgical Health Servs.* v. *Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken* v. *Holder*, 556 U.S. 418, 425-26 (2009)).

[7] *Nken*, 556 U.S. at 427.

[8] 28 U.S.C. § 1442(a)(1).

[9] *See Mesa* v. *California*, 489 U.S. 121, 130 (1989); *see also Arizona* v. *Manypenny*, 451 U.S. 232, 242 (1981) ("[T]he right of removal is absolute for conduct performed under color of federal office.").

defendants' actions under color of federal office and the plaintiff's claims," and (3) the defendant has "assert[ed] . . . a colorable federal defense."[10]  Here, we focus on the second and third factors.

1.

In order to remove, Huntington must establish that it was (a) "acting pursuant to a federal officer's directions," which is sometimes phrased as "acting under" federal direction, and, (b) that a causal nexus exists between the defendants' actions under color of federal office and the plaintiff's claims."[11]

Turning to the first sub-part, in order to be "acting under" the color of federal authority in the context of federal contractor immunity, the Supreme Court has looked to whether the contractor "is helping the Government to produce an item that it needs . . . [or is] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."[12]  In its notice of removal, Huntington avers that when it allegedly exposed Wilde to asbestos, it was producing ships pursuant to the direction of the United States Maritime Commission.[13]  Presumably, the federal government would have had to build those ships had Huntington not done so, and so it meets this part of the test.

The second sub-part, whether there is a causal nexus between the federal officer's direction that Huntington use asbestos and Wilde's injuries, is more complicated.  Following the Supreme Court's lead, we have held that this connection need not be unduly demanding at the removal stage, however, nor

---

[10] *Winters* v. *Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998). Other circuits have differently phrased, but substantively identical, tests.  *See, e.g.*, *Ruppel* v. *CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012).

[11] *Id.* at 398.

[12] *Watson* v. *Philip Morris Cos., Inc.*, 551 U.S. 142, 153-54 (2007).  We "liberally" construe the term "acting under."  *See id.* at 147.

[13] *See* Notice of Removal, at 2-4, ECF No. 1.

can it be attenuated to the point of irrelevance.[14]  Our case law is instructive in demarcating the appropriate line.   In *Winters* v. *Diamond Shamrock Chemical Company*, we reviewed a strict liability claim against an Agent Orange producer.   We held that the key to causation was whether the government had specified the standards and supervised the production of the toxic compound that the plaintiff claimed she was exposed to:

> The gist of this action centers around the trace elements of dioxin contained in Agent Orange and whether a causal relationship exists between Winters's terminal disease and her alleged exposure to that dioxin. We are convinced that the government's detailed specifications concerning the make-up, packaging, and delivery of Agent Orange, the compulsion to provide the product to the government's specifications, and the on-going supervision the government exercised over the formulation, packaging, and delivery of Agent Orange is all quite sufficient to demonstrate that the defendants acted pursuant to federal direction and that a direct causal nexus exists between the defendants' actions taken under color of federal office and Winters's claims. The defendants have demonstrated the second criteria necessary for federal officers removal.[15]

Here, Huntington has pled a causal relationship between government direction and the exposure to asbestos by workers on the government-contracted ships.  That link plays out in four steps.  First, Huntington provided a contract between Avondale and the Maritime Commission by which the former was to produce an N3-S-A1 cargo ship for the latter.   Under this agreement, the government would provide Avondale detailed ship construction specifications, and Avondale was prohibited from "depart[ing] from the requirements of the plans or specifications without prior written approval of

---

[14] *See, e.g.*, *Williangham* v. *Morgan*, 395 U.S. 402, 409 (1969); *Omega Hosp., L.L.C.* v. *La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014) (unpublished); *Winters*, 149 F.3d at 398.

[15] *Winters*, 149 F.3d at 399-400.

the Commission."[16]   The actual construction of the ship was "subject to inspection . . . by inspectors of the Commission."[17]   Second, Huntington submitted the actual specifications for that class of ship, which required that "[a]ll insulating materials [used in the vessel] shall be 85% magnesia or molded amosite asbestos."[18]   Third, with limitations not relevant here, the contract specified that "[t]he Commission will furnish all materials to be incorporated into the construction of the vessels," including, presumably, asbestos insulation.[19]   Finally, Huntington presents a Maritime Commission health inspection report indicating that in 1944 the Avondale yard was actually constructing the N3-S-A1 cargo ship.[20]   In short, as in *Winters*, the federal government has given its contractor detailed, mandatory directions to use a toxic compound and supervised its installation.   Moreover, unlike *Winters*, there is evidence that the federal government actually provided the harmful material.

The problem is that there is simply no evidence that Legendre was ever in contact with these ships.   While Wilde pleads that Legendre worked at Avondale when federal ships were under construction, there is no direct evidence in the record indicating that Legendre actually worked on or around the N3-S-A1 ships that contained federally mandated asbestos.   Nor does Huntington actually plead that he did so.[21]   Without any linkage between Legendre and the vessels, Huntington cannot show a causal nexus between

---

[16] Contract, at 3, ECF No. 1-5.  The agreement also stated that "[t]he Commission shall furnish the Contractor a full set of working plans."  *Id.* at 6.

[17] *Id.* at 6.

[18] Specifications, at 104, ECF No. 1-3.

[19] Contract, at 18, ECF No. 1-5.

[20] Inspection Report, at 9, ECF No. 1-6.

[21] Huntington avers that the plaintiff provided Specification Sheets for federally contracted vessels produced at Avondale.  Notice of Removal, at 3, ECF No. 1. It never puts forward evidence – or even pleads – that Legendre worked on these vessels or was exposed to asbestos while in their environs.

any federal activity and his exposure to asbestos. Wilde's exposure is derivative to her father's; in order for her have a "causal nexus" to federal asbestos, he must have one as well. And because Huntington does not show that he does, this claim fails.

2.

Next, we look to whether Huntington has established a "colorable federal defense." Here, the defendant claims the government contractor defense, which was set out as a form of federal common law by the Supreme Court in *Boyle* v. *United Technologies Corporation*.[22] That defense limits liability if "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."[23]

Huntington focuses on whether it has a federal defense to Wilde's strict liability claims, and we agree that this is its strongest argument.[24] Under then-governing Louisiana law, to make out a strict liability claim:

> [T]he plaintiff bore the burden of proving three elements: (1) that the thing which caused the damages was in the care, custody, and control (garde) of the defendant; (2) that the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) that the vice, ruin, or defect was the cause-in-fact of the plaintiff's damages.[25]

In reviewing Wilde's claims, the district court read her complaint to focus on Avondale's "control," and concluded that the plaintiff focused on the

---

[22] 487 U.S. 500 (1988).

[23] *Id.* at 512; *see also Kerstetter* v. *Pac. Scientific Co.*, 210 F.3d 431, 439 (5th Cir. 2000) (applying *Boyle* to failure to warn claims); *Williams* v. *Todd Shipyards Corp.*, 154 F.3d 416, at *4 (5th Cir. 1998) (unpublished) (gross negligence).

[24] If removal is proper, the federal district court may be able to exercise supplemental jurisdiction over Wilde's other claims. *See* 28 U.S.C. § 1367(a).

[25] *Comardelle* v. *Pa. Gen. Ins. Co.*, No. 13-6555, 2014 WL 6639550, at *2 (E.D. La. Nov. 21, 2014) (internal quotation marks omitted).

company's failure to use asbestos properly, rather than the fact that it used asbestos at all:

> Plaintiff's claims do not hinge on the fact that Avondale possessed asbestos, as the mere possession of asbestos did not allegedly cause Plaintiff's injury, but Plaintiff rather claims that Avondale's failure to properly handle the asbestos material caused her injury. In other words, Avondale's failure to use the asbestos safely, and *not the mere use of* asbestos, gives rise to Plaintiff's claims.[26]

In her briefing papers, Wilde embraces this construction, and explicitly disclaims the theory "that Avondale is liable simply because it had asbestos on its property."[27] Instead, she argues that Avondale "fail[ed] to use [asbestos] safely." This concession binds Wilde in this and future litigation.[28]

In *Boyle*, the Court was concerned with a situation where "the state-imposed duty of care that is the asserted basis of the contractor's liability . . . is precisely contrary to the duty imposed by the Government contract."[29] If the basis for state liability is an act stemming from the defendant's compliance with "reasonably precise [government] specifications," the contractor is not liable.[30] By the same token, if the challenged conduct neither stems from nor conflicts with government contractual requirements, the defense is inapplicable.[31]

---

[26] Order, at 11, ECF No. 26.

[27] *See* Reply, at 3, ECF No. 16.

[28] *See, e.g.*, *Colonial Refrigerated Transp., Inc.* v. *Mitchell*, 403 F.2d 541, 550 (5th Cir. 1968) ("Where a party has taken a position under oath in one judicial proceeding, he is estopped to make a contrary assertion in a later proceeding."). Courts regularly recognize post-removal claim disclaimers in federal officer proceedings. *See, e.g.*, *Dougherty* v. *A O Smith Corp.*, No. 13-1972, 2014 WL 3542243, at *9-16 (D. Del. July 16, 2014) (collecting cases).

[29] *Boyle* v. *United Technologies Corp.*, 487 U.S. 500, 509 (1988).

[30] *Id.* at 512.

[31] *See In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th Cir. 2010) ("The government contractor defense in *Boyle*, 'stripped to its essentials,' is fundamentally a claim that 'the Government made me do it.'") (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 632 (2d Cir. 1990) (brackets omitted)).

No. 15-30476

The government specifications at issue in the case, however, must be "reasonably precise," that is, they must "address, in reasonable detail, the product design feature."[32] Or, phrased differently, "[t]he requirement that the specifications be precise means that the discretion over significant details and all critical design choices will be exercised by the government."[33] "[G]eneral instructions" are not enough.[34] It is not necessary that the defendant provide the full text of the actual specifications, but they must provide enough information for us to determine whether they are legally sufficient.[35]

> Huntington avers in its notice of removal that:

> The United States government also promulgated specific safety rules, regulations and requirements for shipbuilding. This included the 1943 'Minimum Requirements for Safety and Industrial Health in Contract Shipyards,' which was a publication of the U.S. Navy and Maritime Commission that set minimum standards pertaining to the use of asbestos in contract shipyards. Avondale was guided by and required to comply with these and other United States government safety regulations during Federal Vessel construction.[36]

The problem is that Huntington does not attach any of these regulatory materials to its notice of removal, nor does it describe in any detail their

---

[32] *Id.* at 461 (internal quotation marks omitted) (quoting *Kerstetter* v. *Pac. Scientific Co.*, 210 F.3d 431, 438 (5th Cir. 2000)).

[33] *Trevino* v. *Gen. Dynamics Corp.*, 865 F.2d 1474, 1481 (5th Cir. 1989).

[34] *In re Katrina*, 620 F.3d at 464.

[35] *See, e.g.*, *Smith* v. *Xerox Corp.*, 866 F.2d 135, 138 (5th Cir. 1989) (company had produced "reasonably specific" specifications when it provided "a listing of [the original specifications for the product in question], as well as a copy of the original government performance criteria dictating the environmental specifications the government wanted the [product] to meet in terms of temperature, humidity, and salt resistance, and a production contract furnished by [defendant] for a series of [products] containing specific reference to government-approved specifications."); *see also Cuomo* v. *Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (accepting as sufficient "several affidavits and numerous documentary exhibits suggesting that . . . the Navy provided detailed specifications"); *Ruppel* v. *CBS Corp.*, 701 F.3d 1176, 1184 (7th Cir. 2012) (accepting as sufficient affidavits of design manager and "MilSpecs" manual).

[36] Notice of Removal, at 6-7, ECF No. 1.

No. 15-30476

relative requirements. As a result, we have no basis for determining how precise or general these specifications actually are. Without that information, necessary for *Boyle*'s first prong, we lack a basis for concluding that Huntington is likely to establish even a colorable federal contractor defense.

Without either a casual nexus or a strong showing of a colorable federal contractor defense, Huntington cannot show a likelihood of success, and so we need not address the other factors governing the issuance of a stay.[37]

## III.

We DENY Huntington's motion for a stay pending appeal. We GRANT Wilde's motion to file a sur reply. We DENY AS MOOT Huntington's motion to expedite ruling on motion for stay pending appeal. We EXPEDITE the appeal.

We note that our conclusions are WITHOUT PREJUDICE to the consideration of this appeal by a merits panel.

Judge Jones would lean to grant the stay.

---

[37] *See, e.g.*, *La Union Del Pueblo Entero* v. *Fed. Emergency Mgm't Agency*, 608 F.3d 217, 225 (5th Cir. 2010).

10