# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 27, 2022

Lyle W. Cayce
Clerk

No. 21-10686

DOUGLAS D. BOX,

*Plaintiff—Appellee*,

*versus*

PETROTEL, INCORPORATED; PETROTEL OMAN, L.L.C.;
PETROTEL ENERGY (OMAN), INCORPORATED; PETROTEL OMAN
ONSHORE, L.L.C.; ANIL K. CHOPRA, PHD,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-3573

Before STEWART, CLEMENT, and ELROD, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:

Douglas Box sued PetroTel Oman, LLC and affiliated entities in Texas state court, alleging that they breached an oral contract to compensate him for helping them raise funds for an oil and gas project in Oman. The PetroTel entities removed the action to federal court, arguing that removal was proper under the federal officer removal statute because they "acted under" a federal agency by partnering with the United States International Development Finance Corporation to raise funds for the project. They also

No. 21-10686

removed on federal question jurisdiction grounds, invoking the *Grable* doctrine. Mr. Box timely moved to remand.

The district court remanded the action, rejecting both grounds for removal offered by the PetroTel entities. The PetroTel entities timely appealed. Because neither the federal officer removal statute nor the *Grable* doctrine provides a basis for federal subject-matter jurisdiction, we AFFIRM.

I.

The United States International Development Finance Corporation (DFC) is a federal agency that helps private businesses invest in emerging markets abroad.[1] PetroTel Oman, LLC (PetroTel)[2] is an oil and gas company that has been engaged in exploring for and developing hydrocarbons in the Sultanate of Oman since May 2009.

According to Dr. Anil Chopra, CEO of the PetroTel entities, at some point prior to 2019, PetroTel approached the DFC for financial assistance in connection with its ongoing oil and gas operations in Oman (the Oman Project). In February 2019, the DFC approved PetroTel's request for its assistance in securing financing for the Oman project, subject to PetroTel

---

[1] The DFC was formerly known as the Overseas Private Investment Corporation (OPIC). After the passage of the Better Utilization of Investments Leading to Development (BUILD) Act in 2018, OPIC merged with the Development Credit Authority of the United States Agency for International Development to become the DFC. As the parties do in their briefing, and to avoid any confusion, we simply use the term "DFC" rather than use "OPIC" in certain instances and "DFC" in others.

[2] The named defendants in this matter are PetroTel, Inc.; PetroTel Oman, LLC; PetroTel Energy (Oman), Inc.; and PetroTel Oman Onshore, LLC. Consistent with the parties' briefing, we refer to the Appellants simply as "PetroTel" or, where applicable, the "PetroTel entities."

meeting the DFC's due diligence requirements. The mechanics of the PetroTel–DFC partnership were allegedly as follows.

The DFC did not *directly* lend PetroTel any money for the Oman project. Instead, it directed PetroTel—using the DFC's name and credit—to raise the funds through a public offering. In particular, it directed PetroTel to select a "placement agent" to find third-party investors by marketing and offering a type of security known as a Certificate of Participation (COP). It also directed PetroTel to select a "paying agent" to (a) hold the funds raised from the COP sales, (b) disburse those funds to PetroTel when appropriate, and (c) manage payments to the holders of the COPs. The DFC supervised, and had approval authority over, PetroTel's selection of a placement agent and paying agent. In exchange, the DFC guaranteed the COPs and received a fee. The DFC was not itself obligated to provide any funds to PetroTel; rather, PetroTel understood that the entirety of the fundraising would come from public offerings of government-backed COPs.

After soliciting bids and submitting them to the DFC for approval, PetroTel selected Janney Montgomery Scott as the placement agent and Regions Bank as the paying agent. PetroTel paid the placement agent's fees, costs, and expenses, as well as coordinated with the placement agent. To the extent that PetroTel ever needed additional funds, it would notify the DFC, which would then direct the placement agent to issue and market additional COP certificates.

In total, the DFC and PetroTel raised $300,000,000 in funding for the Oman project. Moreover, the DFC agreed to insure the Oman project against political risk up to a maximum of $150,000,000. The first disbursement of funds to PetroTel occurred in August 2020. On PetroTel's account of the facts, Douglas Box did not have any role, or assist in any way, in helping it raise funds for the Oman project.

Mr. Box tells a different story.  Supposedly, in March or April 2017, one of PetroTel's outside attorneys—Aamer Ravji—invited Mr. Box to lunch to discuss the prospect of PetroTel engaging him to help it fundraise for the Oman project.  Mr. Ravji then arranged a dinner meeting between Mr. Box and Dr. Chopra, during which Dr. Chopra allegedly made Mr. Box the following offer: "PetroTel would pay Box $1,000,000 to $2,000,000 in exchange for Box's assistance raising $200,000,000 to $300,000,000 in cash for the Oman Project.  There was one condition, they could not have a written agreement."

Mr. Box claims that he accepted Dr. Chopra's offer and subsequently pulled out all the stops to obtain the funding that PetroTel needed for the Oman project.  This included, *inter alia*, at least one meeting with the DFC's CEO to discuss the process of obtaining a DFC loan.  Mr. Box relayed what he learned from that meeting to PetroTel, which allegedly provided the impetus for PetroTel to seek out the DFC for financial assistance.  Mr. Box alleges that he was the primary point of contact between PetroTel and the DFC, claiming that PetroTel even gave him business cards and a title.  Little did he know, however, that PetroTel apparently had no intention of paying him anything.

When Mr. Box later learned that the DFC had "approved" PetroTel's request for financing, he reached out to PetroTel to discuss payment.  PetroTel informed him that it would not be paying him for his work.  At first, PetroTel told Mr. Box that paying him would be "illegal."  It later told him that there had never been a contract between them at all.

Accordingly, on September 23, 2020, Mr. Box filed a state court petition against the PetroTel entities in Dallas County, Texas.  His petition alleged claims for breach of contract or anticipatory breach, quantum meruit (in the alternative), unjust enrichment (in the alternative), fraud or

fraudulent inducement, negligent misrepresentation, and gross negligence. PetroTel removed the case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §§ 1331, 1441, and 1442(a)(1).

Mr. Box moved to remand, which the district court granted. *Box v. Petrotel Inc.*, No. 3:20-CV-03573-M, 2021 WL 2893857, at *6 (N.D. Tex. July 6, 2021). The district court held first that removal under the federal officer removal statute was improper because PetroTel did not establish that it "acted under" a federal officer or agency. *Id.* at *2–5. It then held that federal question jurisdiction was lacking because Mr. Box's petition alleged only state law claims, and PetroTel had "not established that resolving a federal issue [was] necessary to resolving" any of those claims. *Id.* at *6. PetroTel timely appealed.

## II.

"We review the district court's remand order de novo, without a thumb on the remand side of the scale." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) (cleaned up).

## III.

There are two issues on appeal. First, whether removal was proper under § 1442(a)(1). Second, whether federal question jurisdiction exists under the four-factor test established in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). The district court held that PetroTel failed to establish removability under § 1442(a)(1), and it rejected PetroTel's argument that *Grable* provided a basis for federal

No. 21-10686

jurisdiction.    *Box*, 2021 WL 2893857, at *2–6.    We agree with both conclusions.

## A.

The district court properly concluded that this case does not fall within the ambit of the federal officer removal statute, under which a defendant may remove a state court action to federal court if the action was brought against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).  The removing defendant has the burden of showing: "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's [or agency's] directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296.  The parties' dispute centers on the third prong: whether PetroTel acted pursuant to a federal agency's directions.

PetroTel argues that it acted under the DFC when it raised funds for the Oman project because it "found, pa[id] for, and manage[d] financial entities for DFC so that DFC [could] sell securities, disburse funds, and repay security holders."  In other words, PetroTel contends that because it had to follow certain DFC instructions and obtain the DFC's approval for issuing COPs and managing payments to COP investors, it acted under the DFC within the meaning of § 1442(a)(1).

6

We disagree. While "[t]he words 'acting under' are broad[]" and must be "liberally construed," their breadth is "not limitless." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). The Supreme Court defined those limits in *Watson*, which teaches that the relationship contemplated under § 1442(a)(1) "typically involves subjection, guidance, or control" and "must involve an effort [by the private party] to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 151–52 (cleaned up).

PetroTel's argument founders on the latter requirement: it did not show that it "*assist[ed]*, or help[ed] *carry out*," the DFC's duties or tasks. *See id.* In fact, it was the other way around. PetroTel is a private company that approached the DFC for financial assistance in connection with its otherwise private oil and gas operations. By its own admission, PetroTel has been operating in Oman since May 2009, but it was only in recent years that it began to receive financial assistance from the DFC. There is no doubt that the Oman project is, and always has been, PetroTel's—not the DFC's.

Put differently, PetroTel did not show that it helped the DFC carry out a duty, activity, or task that the DFC otherwise would have had to do itself. *See id.* at 154 ("Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform."); *see also Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017) ("[T]he Navy directed Crane to build parts, and, had Crane not done so, the Navy would have had to build those parts instead.")[3]; *Wilde v. Huntington Ingalls, Inc.*,

---

[3] *Zeringue* was overruled on other grounds by our *en banc* decision in *Latiolais*. Specifically, *Latiolais* overturned our previous federal-officer-removal decisions that relied on a "causal nexus" test for determining the requisite connection between the charged conduct and the defendant's alleged actions under color of federal law. *Latiolais*, 951 F.3d at 296. That prong of the test for federal officer removability is not at issue here.

616 F. App'x 710, 713 (5th Cir. 2015) (per curiam) ("Presumably, the federal government would have had to build those ships had Huntington not done so, and so it meets [the acting under] part of the test.").

PetroTel's attempt to analogize this case to *Butler v. Coast Electric Power Association*, 926 F.3d 190 (5th Cir. 2019), is unavailing. In *Butler*, members of three rural cooperatives filed a state court action, alleging that the cooperatives unlawfully withheld patronage capital to which the members claimed entitlement under state law. *Id.* at 192–94. The cooperatives removed under § 1442(a)(1), and the district court remanded the action. *Id.* at 192. We reversed, holding that the cooperatives met the requirements for federal officer removal and thus were entitled to defend themselves in a federal forum. *Id.* at 201.

The facts in *Butler* undeniably bear some similarities to those here. The dispute in *Butler* arose out of loans that the rural cooperative defendants received from the Rural Utilities Service (RUS)—a federal agency created by Congress with the mission of providing below-market loans to utilities providers in rural, underserviced areas. *Id.* at 193. Like all RUS borrowers, the rural cooperatives' receipt of RUS loans was conditioned upon their compliance with strict RUS restrictions and approval requirements. *Id.* at 193–94. Based on the "close and detailed lending relationship" between the RUS and the cooperatives, as well as their "shared goal of furthering affordable rural electricity," we were satisfied that the cooperatives acted under a federal agency.[4] *Id.* at 201.

---

[4] It is worth noting that the parties in *Butler* did *not* dispute the "acting under" prong of § 1442(a)(1). *Id.* at 201. We addressed it—albeit summarily—only to "satisfy ourselves that subject matter jurisdiction [was] proper." *Id.* (citation omitted).

That sounds a little bit like our case.  After all, the DFC—like the RUS—is a federal agency tasked with using federal financial resources to further a federal purpose.  And the DFC—like the RUS—regulates, supervises, and exerts a certain level of control over the entities to which it provides those resources.  But that is where the comparisons end; *Butler* is distinguishable where it counts most.

The rural cooperatives in *Butler* are a fundamentally different kind of entity than PetroTel.  Whereas PetroTel is a for-profit, private entity that works primarily for its own ends, the rural cooperatives are nonprofit, state-law entities that "exist to provide a public function conceived of and directed by the federal government." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142–44 (11th Cir. 2017) (holding, in a virtually identical context, that an Alabama rural electric cooperative acted under the RUS for purposes of § 1442(a)(1)); *see also Butler*, 926 F.3d at 193–94 (describing the cooperatives as "nonprofit, member-owned, state-law entities" that deliver electricity to areas not adequately serviced by commercial businesses).

In the absence of a loan agreement with the cooperatives, the government itself would have to provide the service of delivering electricity to rural communities.  *See, e.g.*, *Caver*, 845 F.3d at 1144.  In this sense, the cooperatives are "instrumentalities of the United States." *Butler*, 926 F.3d at 201 (citation omitted).  PetroTel is not, as there is no indication that the government itself would have to drill for hydrocarbons in Oman absent the PetroTel–DFC partnership.

In sum, PetroTel did not assist or help the DFC carry out a task that the DFC—or any federal superior—otherwise would have had to do itself.  Accordingly, PetroTel did not act under the DFC, so it was not entitled to remove under § 1442(a)(1).

No. 21-10686

B.

The district court also correctly determined that *Grable* does not serve as a sound basis for federal jurisdiction.[5] The *Grable* doctrine provides that, even when a state court petition pleads only state law causes of action, federal jurisdiction nonetheless exists "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314 (2005)). *Grable* confers federal jurisdiction in a "slim category" of cases. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

PetroTel does not deny that Mr. Box's state court petition alleged only state law causes of action. Rather, PetroTel argues that the state court petition necessarily raised a federal issue because Mr. Box's breach of contract and fraudulent inducement claims depend on the existence of a valid contract, but the alleged contract at issue is void under federal securities law. Thus, PetroTel contends that federal jurisdiction exists under *Grable* because "the federal securities issue . . . necessarily must be resolved in order to grant Mr. Box relief on his claims."

The district court rejected this argument, observing that contract illegality is an *affirmative defense* under Texas law. *Box*, 2021 WL 2893857, at *6. And, it explained, affirmative defenses generally are insufficient to establish statutory "arising under" jurisdiction because they do not appear

---

[5] We have jurisdiction to review this component of PetroTel's appeal. Granted, § 1447(d) *used* to bar appellate courts from reviewing remand orders when the basis for removal was federal question jurisdiction. *See* 28 U.S.C. § 1447(d). But that changed in 2021 with the Supreme Court's decision in *BP P.L.C. v. Mayor & City Council of Baltimore*. There, the Court held that "a court of appeals may review the merits of *all* theories for removal that a district court has rejected." 141 S. Ct. 1532, 1537 (2021) (emphasis added).

on the face of the well-pleaded complaint. *Id.* (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)). So, the district court held, even though PetroTel was entitled to plead contract illegality as an affirmative defense, it did not follow that the state court petition "necessarily raised" the federal securities issue. *Id.* We agree.

PetroTel argues that the district court should not have applied the well-pleaded complaint rule in determining whether it had subject-matter jurisdiction because *Grable* is an "exception to the well pleaded complaint rule." But PetroTel misunderstands *Grable*. Neither the Supreme Court nor this court has ever characterized *Grable* as an "exception" to the well-pleaded complaint rule or as a way around its strictures. In fact, this court has said the very opposite. *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942 (5th Cir. 2013) ("A federal court can exercise jurisdiction *only where* the case satisfies the well-pleaded-complaint rule." (emphasis added)). Therefore, a plaintiff invoking *Grable* as the basis for federal jurisdiction must *still* show that the alleged federal issue arises on the face of the state court petition.

Here, a federal claim does not appear on the face of the state court petition. PetroTel observes correctly that Mr. Box has the burden to prove a valid contract in order to establish his breach of contract and fraudulent inducement claims. In Texas, to show the existence of a valid contract, the plaintiff must show: "(1) an offer was made; (2) the other party accepted . . . ; (3) the parties had a meeting of the minds . . . ; (4) each party consented . . . ; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018) (citing *E–Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet. h.)). But none of those elements requires proving a federal issue. *Venable*, 740 F.3d at 943. Were it otherwise, plaintiffs alleging breach of contract and related claims would face

the virtually insurmountable burden of having to preemptively defeat, at the pleading stage, every available *defense* to contract validity. That is not the law.

PetroTel's affirmative defense of contract illegality belongs in a responsive pleading, which cannot itself support federal jurisdiction. *E.g.*, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832 (2002). That is true even for federal defenses that are "inevitable." *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008).

Finally, PetroTel's insistence that the court will have to resolve a federal securities issue to grant Mr. Box relief on his claims misses the point. "[A]lthough the parties may ultimately litigate a federal issue in their case, that fact does not 'show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution' or the laws of the United States." *Venable*, 740 F.3d at 943 (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

Accordingly, because Mr. Box's state court petition does not satisfy the well-pleaded complaint rule, the district court correctly determined that *Grable* does not provide a basis for federal jurisdiction.

## IV.

Because PetroTel has not shown a proper basis for federal jurisdiction, the district court properly remanded this action to the state court whence it came.

The judgment is AFFIRMED.

12