In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2236

HENRY RUPPEL,

*Plaintiff-Appellee,*

*v.*

CBS CORPORATION,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:12-cv-00293—**G. Patrick Murphy**, *Judge.*

ARGUED OCTOBER 23, 2012—DECIDED NOVEMBER 30, 2012

Before FLAUM and SYKES, *Circuit Judges*, and RANDA, *District Judge.*[*]

FLAUM, *Circuit Judge*. Henry Ruppel filed suit against CBS in Illinois alleging CBS's predecessor-in-interest, Westinghouse Corporation, caused the mesothelioma

[*] The Honorable Rudolph T. Randa, United States District Court for the Eastern District of Wisconsin, sitting by designation.

from which he currently suffers. Westinghouse had included asbestos in the turbines it supplied to the United States Navy, and Ruppel was allegedly exposed to it during his Naval service and later when he worked on an aircraft carrier as a civilian. CBS removed Ruppel's suit to the Southern District of Illinois under the federal officer removal statute, which permits removal of certain suits where a defendant that acted under a federal officer has a colorable federal defense. 28 U.S.C. § 1442(a)(1). Ruppel moved to remand and, without giving CBS a chance to respond, the district court granted the motion. The district court concluded Ruppel only sued CBS for failing to warn about the dangers of asbestos for which there is no federal defense. CBS appeals the district court's order, and we reverse. CBS's relationship with Ruppel arises solely out of CBS's duties to the Navy. It also has a colorable argument for the government contractor defense, which immunizes government contractors when they supply products with specifications approved by the government.

## I. Background

In early 2012, Ruppel sued CBS and forty other defendants in Illinois. Ruppel alleged that he developed mesothelioma due to his exposure to asbestos products manufactured, sold, distributed, or installed by defendants. CBS had included asbestos in turbines it supplied to the Navy, which Ruppel encountered during his service on the U.S.S. Fall River between 1946 and 1954 and when he oversaw the construction of the U.S.S. Enterprise, as a civilian, from 1957 to 1971.

CBS removed the proceeding to federal court under the federal officer removal statute. 28 U.S.C. § 1442(a)(1). This statute allows defendants to remove suits for certain actions that they took while acting under federal officers. Among the requirements for removal is a colorable federal defense, and CBS asserted it was entitled to government contractor immunity. Its notice of removal alleged it supplied asbestos under the Navy's direction and in accordance with detailed Navy specifications, the Navy closely controlled the process, and the Navy was aware of asbestos's health hazards. Although CBS only submitted a short, plain statement of the grounds for removal, *see* 28 U.S.C. § 1446(a), it offered to respond more fully to a motion to remand, which Ruppel filed shortly thereafter. Ruppel implied his complaint asserted only failure-to-warn claims against CBS and argued that, because the military did not "preclude" adequate warnings, the government contractor defense was inapplicable. The local rule provided CBS thirty days to respond to Ruppel's motion, S.D. Ill. R. 7.1(c)(1), but the district court remanded the case after only nine days and before CBS responded. The district court largely adopted Ruppel's arguments. It held that CBS's relationship with the Navy lacked a "causal nexus" to Ruppel's claims because the Navy did not prevent CBS from providing adequate warnings.

On the day after the district court's order, CBS filed an "emergency motion for a vacatur or stay pending remand order," arguing the court should have provided CBS the opportunity to respond to Ruppel's motion. CBS also asked the district court to refrain from sending a

certified copy of its remand order because the copy would permit the state court proceedings to resume. The next day, however, the district court made a docket entry noting it sent the certified copy to the state court. Later, it denied CBS's motion, noting 28 U.S.C. § 1447(d) stripped it of jurisdiction to reconsider the remand order. The district court did not address the exception in that subsection for cases, like this one, removed under section 1442.

CBS next filed a motion to alter or amend the judgment under Rule 59(e), raising most of the arguments it now raises on appeal and supporting its factual assertions with affidavits and exhibits. Namely, this material supported CBS's assertions that the Navy required CBS to use asbestos, the Navy controlled the content of any warnings, and the Navy knew of asbestos's health risks. The district court never responded to this motion. The state court proceedings had already resumed, and, fearing a final judgment in state court, CBS withdrew its Rule 59(e) motion and filed a notice of appeal. Although 28 U.S.C. § 1447(d) generally prevents this Court from reviewing a district court's remand order, it permits appellate review of cases removed under section 1442.

## II. Discussion

Congress has passed versions of the federal officer removal statutes since 1815 to provide a federal forum for officers whose duties under federal law conflict with

state law. *Willingham v. Morgan*, 395 U.S. 402, 405 (1969). The statute evinces concern that "unfriendly" states will impose state-law liability on federal officers and their agents for actions "done under the immediate direction of the national government." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Because the federal government "can act only through its officers and agents," the removal statute promotes litigating federal defenses (like official immunity) in a federal forum so that "the operations of the general government [are not] arrested at the will of one of [the states]." *Id.*; *see Willingham*, 395 U.S. at 406-07. Although the views expressed in these cases may have been more applicable in the nineteenth century than today, the statute's current text continues to permit "any officer . . . of the United States or . . . person acting under" them to remove actions "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Importantly, the "under color of office" component encompasses an additional requirement—defendants must have a colorable federal defense to the plaintiff's action. *Mesa v. California*, 489 U.S. 121, 132-34 (1989). This requirement creates Article III jurisdiction, *id.* at 136 (because section 1442(a) is purely jurisdictional, "the raising of a federal question in the officer's removal petition . . . constitutes the federal law under which the action against the officer arises for Art[icle] III purposes"); *see generally Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 820-27 (1824), and it represents an exception to the well-pleaded complaint rule, which would ordinarily defeat jurisdiction when the federal question arises outside of the plaintiff's complaint, *Mesa*, 489 U.S.

at 136; *see generally Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

"We review the legal question of whether there [is] federal jurisdiction" de novo. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008). The party seeking removal bears the burden of proving the grounds for its motion. *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 280 (7th Cir. 2002); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). Ruppel incorrectly argues that private parties (as opposed to federal officers) invoking this statute carry a "special burden." *See Williams v. Gen. Elec. Co.*, 418 F. Supp. 2d 610, 614 (M.D. Pa. 2005). To the contrary, "[t]he federal officer removal statute is not 'narrow' or 'limited,'" *Willingham*, 395 U.S. at 406, and Ruppel's reading also finds no support in the statute's authorization of removal by private persons alongside federal officers, drawing no distinction between governmental and private parties, *see* 28 U.S.C. § 1442(a)(1). Indeed, the statute has historically authorized removal by private parties without qualification. *See Maryland v. Soper (No. 1)*, 270 U.S. 9, 30 (1926) (private individual acting as chauffeur for agents entitled to removal, although the Court denied removal for other reasons); *Davis v. South Carolina*, 107 U.S. 597, 600 (1883) (noting "the protection which the law thus furnishes to the marshal and his deputy, also shields all who lawfully assist him in the performance of his official duty"). With this in mind, we turn to the statute's four requirements. CBS must show it was a (1) "person" (2) "acting under" the United

States, its agencies, or its officers (3) that has been sued "for or relating to any act under color of such office," and (4) has a colorable federal defense to the plaintiff's claim. *See* 28 U.S.C. § 1442(a); *Mesa*, 489 U.S. at 132-34.

### A. CBS Is a Person Under the Statute.

CBS easily satisfies the person requirement. In construing statutes, "unless the context indicates otherwise" the "words 'person' and 'whoever' include corporations [and] companies . . . as well as individuals." 1 U.S.C. § 1. There is no indication that Congress meant to exclude corporations. Furthermore, we have previously noted in dicta that corporations were persons under section 1442(a). *See Pollitt v. Health Care Serv. Corp.*, 558 F.3d 615, 616 (7th Cir. 2000) (per curiam).

### B. CBS Was Acting Under a Federal Officer.

CBS satisfies the second element because Ruppel's injury occurred while it "acted under" a federal officer. We liberally construe this term. *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007). In *Watson*, the Supreme Court rejected a cigarette manufacturer's argument that it acted under the federal government because it was subjected to heavy regulation. *Id.* at 152. Drawing on its previous federal officer removal cases, the Court held that "'acting under' must involve an effort to *assist*, or to help *carry out*, the federal superior's duties or tasks." *Id.* (emphases in original). Cases in which the Supreme Court has approved removal involve de-

fendants working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government. *See, e.g., Soper (No. 1)*, 270 U.S. at 30 (chauffeur assisting prohibition agents in distillery raid "has the same right to the benefit" of the federal officer removal statute as the agents); *Davis v. South Carolina*, 107 U.S. at 600 (permitting removal by Army corporal who assisted federal revenue officers in distillery raid); *Tennessee v. Davis*, 100 U.S. at 261 (permitting removal by federal revenue officer that shot and killed victim during a federal distillery raid). Here, CBS worked hand-in-hand with the government, assisting the federal government in building warships. "Acting under" covers situations, like this one, where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete.

### C. CBS Was Acting Under Color of Federal Authority.

CBS also satisfies the third element which requires the gravamen of the claim against CBS occur while it acted under color of federal authority. As CBS explains, this requirement is distinct from the "acting under" requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage—there must be a "causal connection between the charged conduct and asserted official authority." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (internal quotations omitted). CBS can satisfy this requirement if its relationship with Ruppel "derived solely from [its] official duties" for the Navy.

*See Willingham*, 395 U.S. at 409. Here, CBS acted under the Navy by installing asbestos. This duty gave rise to Ruppel's complaint. Thus, the gravamen of Ruppel's complaint occurred while CBS acted under color of federal authority.

### D. CBS Has a Colorable Federal Defense.

The parties primarily focus on the final requirement for removal—that CBS has a colorable federal defense. As we noted above, this requirement not only satisfies Article III jurisdiction, it also encapsulates Congress's desire to have federal defenses litigated in federal forums. *Mesa*, 489 U.S. at 127-34; *Willingham*, 395 U.S. at 406-07. Requiring the defense only be colorable, instead of "clearly sustainable," advances this goal. *Id.* at 407. At this point, we are concerned with who makes the ultimate determination, not what that determination will be. If defendants had to "virtually . . . win [their] case before [they] can have it removed," we would leave nothing for the eventual trial court to decide. *Acker*, 527 U.S. at 431 (internal quotations omitted); *see Willingham*, 395 U.S. at 407. The validity of the defense will present "complex issues, but the propriety of removal does not depend on the answers." *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994). Instead, the claimed defense need only be "plausible." *Id.*

Preliminarily, we must determine what kind of claims Ruppel's complaint alleges. Both parties agree he alleges failure-to-warn claims against CBS, but CBS argues the

complaint also asserts liability based on its mere use of asbestos. If CBS has a colorable defense as to either claim, then the entire case is removable. *See* 28 U.S.C. § 1367; *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) (a party cannot amend the complaint after removal to defeat jurisdiction). After addressing this issue, we turn to the applicability of the government contractor defense.

### 1.  Ruppel Seeks Recovery for CBS's Use of Asbestos and Its Failure to Warn.

Ruppel's primary argument on appeal is his complaint contains only failure-to-warn claims, presumably, because he thinks the government contractor defense is less applicable to these suits. Turning to the complaint, paragraph eleven alleges the:

> Defendants failed to exercise ordinary care and caution for the safety of the Plaintiff in one or more of the following respects:
>
> (a) Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons working with or around them would inhale asbestos fibers;
>
> (b) Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling them;

(c) Included asbestos in their products when adequate substitutes for the asbestos in them was available;

(d) Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling the asbestos fibers contained in them;

(e) Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling the asbestos fibers in them; and

(f) Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which workers might be exposed while working with the products.

(g) Designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

(Dkt. 3-1 at 5).

Subparagraphs (a), (b), (c), and (g) plainly allege liability based on the mere use of asbestos. First, the introductory clause states Ruppel could recover "in one or more of the following [subparagraphs]," indicating that Ruppel alleges the facts in each subparagraph independently give rise to liability. Second, the language in those four subparagraphs contain the hallmarks of negligence liability. *See Jablonski v. Ford Motor Co.,*

955 N.E.2d 1138, 1153-54 (Ill. 2011) ("A product liability action . . . is based upon fundamental concepts of common law negligence," which require the plaintiff to show "the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture of the product" and that "the risk of harm outweighs the utility of a particular design." (internal quotations omitted)). Accordingly, Ruppel's complaint alleges CBS was negligent because it "[i]ncluded asbestos in their products"—i.e., because it used asbestos. To be sure, the complaint also contains failure-to-warn claims in subparagraphs (e) and (f). Ruppel counters that the use-of-asbestos subparagraphs were only "foundational to the failure to warn claim that was being made; if CBS never used a hazardous material in its manufacture of its products, there would have been no need to warn of same." However, Ruppel's reading is inconsistent with the introductory "one or more" clause. Additionally, subparagraph (g), which comes after the two failure-to-warn subparagraphs, asserts liability because CBS "included asbestos-containing components" in its products—another use-of-asbestos claim. We decline to counterintuitively read that claim as "foundational" given its position in the complaint. We conclude that Ruppel's complaint contains use-of-asbestos and failure-to-warn claims.

### 2. CBS Has a Colorable Argument for the Government Contractor Defense.

The government contractor defense, developed in *Boyle v. United Technologies Corp.*, immunizes government con-

tractors from state tort law when the government had a hand in a defendant's allegedly defective design. 487 U.S. 500, 511-12 (1988). The Court noted that, "[i]t makes little sense to insulate the Government against financial liability," through sovereign immunity and the Federal Tort Claims Act ("FTCA"), "for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." *Id.* at 512. Drawing on the FTCA, the Court held federal interests preempt state law duties and immunize defendants when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*.

While the third element ensures the manufacturer does not withhold useful safety information, the first two elements capture the government's discretion in the design. After all, *Boyle* is premised on the conflict between the "peculiarly federal concern" regarding the design of military equipment, on the one hand, and state tort law duties, on the other. *See id.* at 505, 511. Only when the government exercises discretion in the design feature does a preemptive federal interest exist. Thus, if the federal government "purchas[ed] . . . an air condition-unit, specifying the cooling capacity but not the precise manner of construction" the defendant could not assert the defense because the "contractor could comply with both its contractual obligations and [a hypothetical] state-prescribed duty" to "include a certain safety fea-

ture." *Id.* at 509. *Boyle* presented a different scenario. There, the decedent initially survived a helicopter crash but ultimately drowned because, plaintiffs alleged, the escape hatch should have opened outward instead of inward. *Id.* at 502-03. The Court found the "significant conflict" between "the state-imposed duty of care . . . to equip helicopters with the sort of escape-hatch mechanism petitioner claims was necessary" and the "duty imposed by the Government contract . . . to manufacture and deliver helicopters with the sort of escape-hatch mechanism shown by the [military] specifications" immunized the defendant. *Id.* at 509. We proceed under this framework and first determine the Navy's role in CBS's inclusion of asbestos. Then, we examine *Boyle*'s applicability to Ruppel's failure-to-warn claims.

### i. The Government Contractor Defense Is Applicable to Ruppel's Use-of-Asbestos Claims.

Although we established the complaint asserts use-of-asbestos claims, Ruppel presents no argument disputing the applicability of the government contractor defense to those claims, and we find CBS presents a colorable defense. The exhibits attached to CBS's Rule 59(e) motion in the district court support the jurisdictional allegations in CBS's notice of removal.[1] With respect to

---

[1] CBS's initial notice of removal contained only a "short and plain statement of the grounds for removal" without supporting exhibits. *See* 28 U.S.C. § 1446(a). And because CBS withdrew its Rule 59(e) motion, the district court did not transmit it as part

(continued...)

the first two elements establishing discretion, the United States not only "approved reasonably precise [turbine] specifications" with which CBS's products conformed, *see Boyle*, 487 U.S. at 512, the Navy explicitly required asbestos, making it impossible to comply with the Navy and state tort law simultaneously. CBS provided the affidavit of James Gate, a former manager of design verification for CBS. (Dkt. 47, Ex. A.) His affidavit states that military design specifications ("MilSpecs") required using asbestos, that the Navy

---

[1] (...continued)

of the record on appeal. *See* 7th Cir. R. 10. Consequently, Ruppel argues that CBS waived the arguments relying on this material, while CBS urges us to remand the case for resolution or decide the issue based only on the notice of removal. However, CBS *did* designate the Rule 59(e) motion and exhibits as part of the record under Circuit Rule 10 (permitting parties to unilaterally designate documents tendered to, but not considered by, the district court), *see* (Dkt. 60), although its appellate brief apparently fails to recognize this. Notwithstanding, CBS could also have amended its notice of removal and added supporting exhibits under 28 U.S.C. § 1653 (permitting parties to amend "[d]effective allegations of jurisdiction . . . in the trial or appellate courts"). *See, e.g., Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 584-85 (7th Cir. 2012); *see also Willingham*, 395 U.S. at 407 n.3 (citing 28 U.S.C. § 1653) (noting the material on which it based its removal finding "should have appeared in the petition for removal," but "for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits").

oversaw the turbines' production, and the Navy did not permit deviation from the MilSpecs. (*Id.* at ¶¶ 6-8, 11, 13, 15, 16-29.) Navy Rear Admiral Roger B. Horne, Jr.'s affidavit confirms that the MilSpecs required asbestos, the Navy carefully inspected the turbines, and the Navy would have rejected a turbine without asbestos. (Ex. B ¶¶ 1, 16-17, 20-22, 34.) CBS also submitted the actual MilSpecs, which show the Navy required CBS to use asbestos. (Ex. C.)

With respect to the knowledge element, CBS provided evidence that the Navy knew of all of the hazards associated with asbestos such that there were no "dangers in the use of the equipment that were known to the supplier but not to the United States." *See Boyle*, 487 U.S. at 512. CBS submitted the affidavit of Dr. Samuel Forman, who undertook a study of the Navy's knowledge of asbestos hazards and stated the Navy knew of the hazards by 1922. (Ex. G ¶ 20.) Further, Dr. Forman stated that a consultant to high-ranking Naval health officials told the Navy's Bureau of Medicine and Surgery that an insulation supplier (like Westinghouse) had concluded asbestos presented serious health risks, but the Navy did not "want[] any change in the specifications as the performance with the present materials [was] entirely satisfactory." (*Id.* at ¶¶ 33-34) (original brackets omitted). As such, CBS has a colorable defense to the use-of-asbestos claims.

### ii. The Government Contractor Defense Is Applicable to Ruppel's Failure-to-Warn Claims.

"It is well established that the government contractor defense articulated by the Supreme Court in *Boyle* may operate to defeat a state failure-to-warn claim." *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996). *Boyle*'s interest in "insulating" contractors from suits when the "the government exercises its discretion and approves designs" extends to situations where it "approves warnings intended for users." *Id.* (quoting *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995)). Thus, we have held the government contractor defense is applicable to failure-to-warn claims when the defendant can show that: (1) "the government exercised its discretion and approved certain warnings," which must "go beyond merely 'rubber stamping' the contractor's choice"; (2) "the contractor provided the warnings required by the government"; and (3) "the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." *Id.* at 1003-04.[2]

---

[2] The district court required and Ruppel incorrectly asserts that the government contractor defense requires the Navy to have precluded adequate warnings. Ruppel cites *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992), and *In re Joint Eastern & Southern District New York Asbestos Litigation*, 897 F.2d 626, 632 (2d Cir. 1990), for the proposition that the Navy had to explicitly forbid warnings before a contractor can raise the *Boyle* defense against failure-to-warn claims.

(continued...)

Like the use-of-asbestos claim, the exhibits attached to CBS's Rule 59(e) motion establish a colorable argument for the defense. First, the Navy controlled the content and placement of warnings. Gate's affidavit states the "Navy had precise specifications as to the nature of any communication affixed to equipment supplied by Westinghouse to the Navy," and "Westinghouse would not have been permitted . . . to affix any type of warning . . . beyond those required by the Navy, without prior discussion with, and approval by, the Navy." (Ex. A ¶ 31.) Instead, the Navy supplied its own instruction manuals with precautions. (*Id.* at ¶ 32.) The actual MilSpecs confirm the Navy's control over the inclusion of warnings. *See* (Ex. E § 3.4). Next, CBS complied with the Navy's warning requirements (by affixing none) because the Navy prohibited warnings. Admiral Horne stated that the MilSpecs "addressed the instructions considered essential by the Navy to warn individuals working with that equipment and material about potential hazards," and they did not include warnings about asbestos. (Ex. B ¶¶ 29-30.) Finally, the third

---

[2] (...continued)

We expressly rejected this standard in *Oliver*, stating "[w]e cannot accept as consistent with *Boyle* the suggestion that there is any strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the warnings actually incorporated." *Oliver*, 96 F.3d at 1004 n.8. What is more, the Ninth Circuit subsequently adopted the *Oliver* test and rejected Ruppel's reading of *In re Hawaii*. *See Getz v. Boeing Co.*, 654 F.3d 852, 866-67 (9th Cir. 2011).

element in *Oliver* mirrors the third *Boyle* requirement, which as explained above, CBS satisfies because there is nothing CBS knew about asbestos that the Navy did not. As such, CBS has a colorable defense for the failure-to-warn claims as well.

### III.  Conclusion

For the foregoing reasons, we REVERSE the district court's decision and REMAND for further proceedings consistent with this opinion.