OHIO STATE CHIROPRACTIC AS-SOCIATION; Thaddeus C. Bosman, D.C., Inc., Plaintiffs–Appellants,

v.

HUMANA HEALTH PLAN INC.; Humana Health Plan of Ohio, Inc., Defendants–Appellees.

No. 15–3130.

United States Court of Appeals, Sixth Circuit.

May 9, 2016.

**620**

BEFORE: BOGGS, SUTTON, and COOK, Circuit Judges.

BOGGS, Circuit Judge.

When Humana discovered that it had accidentally paid chiropractors more than was required by Medicare, it decided to withhold portions of subsequent payments. The chiropractors brought suit in state court and Humana used the officer-removal statute to remove the case to federal court. Humana does not act under a federal agency in its capacity as a Medicare Advantage organization. We therefore reverse and remand with instructions that the district court remand this case to the state court from which it was removed.

I

Medicare Advantage (MA) allows individuals to receive Medicare benefits through private health-insurance plans instead of Medicare Parts A and B, the government's fee-for-service program. *See* 42 U.S.C. § 1395w–21. To participate, insurers referred to as Medicare Advantage organizations (MAOs) contract with the federal Centers for Medicare & Medicaid Services (CMS). *Id.* § 1395w–27; 42 C.F.R. § 422.503. CMS makes monthly per-beneficiary payments to MAOs, which take on the prospective financial risk of serving Medicare beneficiaries. 42 U.S.C. §§ 1395w–23,—25(b).

Generally speaking, MAOs have latitude to "select the [health-care] providers from whom the benefits under the plan are provided." *Id.* § 1395w–22(d)(1). To that end, MAOs often contract with physicians and hospitals. *Id.* § 1395w–22(a)(2)(A). But to cover the full panoply of Medicare benefits, MA plans include services that are sometimes furnished by non-contract providers. *Ibid.;* 42 C.F.R. § 422.100(b). Payment to non-contract providers must be "equal to at least the total dollar amount of payment for such items and services as would otherwise be authorized under [P]arts A and B"—the fee-schedule amount. 42 U.S.C. § 1395w–22(a)(2)(A)(i)–(ii). Non-contract providers, in turn, "must accept, as payment in full, the amounts that the[y] could collect if the beneficiary were enrolled in [Parts A and B]." 42 C.F.R. § 422.214(a)(1).

That brings us to this case. Humana is an MAO. It had no contract with Thaddeus C. Bosman, D.C., Inc., which would invoice Humana for its chiropractic services. For years, Humana paid Bosman for care furnished to its MA plan enrollees at the fee schedule, regardless of the amounts invoiced. But in 2012, a "technical error" in its claims-processing system caused Hu-

mana to pay Bosman the full amounts billed. By the time the glitch was corrected, payments to Bosman had, by Humana's accounting, exceeded the fee schedule by $1,287.48. Humana mailed Bosman several notices of the error. Each advised that remittances above the fee schedule were overpayments and requested their refund. Bosman balked and sought to appeal that decision within Humana. Humana upped the ante. To offset the alleged overpayments, it withheld portions of subsequent payments to Bosman for care provided to members of its MA plan.

In 2014, Bosman and the Ohio State Chiropractic Association filed suit against Humana in Ohio state court. Their amended complaint sought: damages for conversion, unjust enrichment, and breach of implied contract; an order declaring that Humana cannot "recoup[ ] fees which it alleges were 'overpaid,' " and an injunction preventing it from doing so; and class certification. Humana removed the case to federal district court pursuant to 28 U.S.C. §§ 1441 and 1442(a). A week later, it moved to dismiss, arguing that Bosman failed to exhaust administrative remedies available through the Medicare Act. See 42 U.S.C. § 405(g). Bosman responded with a motion to remand for lack of subject-matter jurisdiction. Without ruling on Bosman's motion, the district court granted Humana's motion and dismissed the complaint for failure to exhaust administrative remedies.

On appeal, Bosman argues that the district court lacked subject-matter jurisdiction to hear the case and, alternatively,

that its claims are not subject to the Medicare Act's exhaustion requirement.

## II

Our analysis starts (and, in this case, ends) with the threshold question whether Humana could avail itself of § 1442(a) to remove the suit.[1] The statute provides a federal forum to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." Humana is not a federal agency or officer. Removal was nonetheless proper, Humana argues, because the federal government delegates authority to MAOs to administer Medicare benefits. Humana claims that its contract to "administer[ ] Part C of Medicare" amounts to a government function without which "providers would receive payment directly from the federal government." By Humana's reckoning, to carry out that function it is "contractually obligated to comply with applicable federal statutes, directives and guidance," which govern "all facets" of its relationship with Bosman. In particular, it points to the MA statute and attendant CMS regulations that address aspects of MAO payment to non-contract providers. See 42 U.S.C. §§ 1394w–22(a)(2)(A), (k)(1), 1395w–27(f); 42 C.F.R. §§ 422.100(b), 422.214(a).

Section 1442 permits removal only if Humana was "acting under" an "agency" or "officer" of "the United States." § 1442(a)(1). Humana contends that "acting under" requires only that its "relation-

---

1. On appeal, Humana drops its argument that the case was removable through 28 U.S.C. § 1441 because it arises under federal law. See 28 U.S.C. § 1331. Perhaps it recognized the irreconcilability of its positions on exhaustion and original jurisdiction. Regardless, the argument lacks merit. No federal question appears on the face of the complaint, see *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 612 (6th Cir.2013), and Bosman's state-law claims do not necessarily raise a substantial federal issue, see *Gunn v. Minton*, —— U.S. ——, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013).

ship to the plaintiff 'derived solely from [Humana's] official duties.'" *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir.1996) (quoting *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). That interpretation moves the goalposts. First, the quoted language from *Willingham* referred to "a civil suit of" a particular "nature"—one involving "senior" federal "officials" whose alleged conduct arose from "official duties." 395 U.S. at 409, 89 S.Ct. 1813.

More fatal, *Willingham* preceded *Watson v. Philip Morris Cos.*, 551 U.S. 142, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007). In *Watson*, the Supreme Court held that a private person's "acting under" a federal agency "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." 551 U.S. at 152, 127 S.Ct. 2301. Formal "delegation of legal authority" might authorize removal under § 1442, but regulation of an activity cannot, no matter how extensive or complex it may be. *Id.* at 156, 127 S.Ct. 2301. A dictum in *Watson* suggested that some private contractors can invoke the statute, perhaps only those whose relationship with the federal government "is an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* at 153, 127 S.Ct. 2301.

Humana also relies heavily on the *Watson* Court's statement that § 1442 "must be 'liberally construed.'" *Id.* at 147, 127 S.Ct. 2301 (quoting *Colorado v. Symes*, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)). The narrower officer-removal statute under consideration in *Symes* protected only those "acting under or by authority of" federal officers who were themselves "acting by authority of any revenue law of the United States." Act of Aug. 23, 1916, ch. 399, § 33, 39 Stat. 532. A liberal construction, the *Symes* Court reasoned, served Congress's desire to maintain the

supremacy of federal law by protecting federal officers "against peril of punishment for violation of state law." 286 U.S. at 517, 52 S.Ct. 635; *see also Tennessee v. Davis*, 100 U.S. 257, 258, 25 L.Ed. 648 (1879) (concern animating the passage of Act of July 13, 1866, ch. 184, 14 Stat. 171, was that "operations of the general government may at any time be arrested at the will of one of the States").

In fact, each of the broad interpretations that Humana emphasizes traces to earlier versions of § 1442 that granted the removal power only to individuals enforcing federal customs and revenue laws. *See Arizona v. Manypenny*, 451 U.S. 232, 241–42, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Willingham*, 395 U.S. at 405–06, 89 S.Ct. 1813; *Bennett v. MIS Corp.*, 607 F.3d 1076, 1088 (6th Cir.2010) (quoting remark in *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir.2008), that *Maryland v. Soper (No. 1)*, 270 U.S. 9, 46 S.Ct. 185, 70 L.Ed. 449 (1926), demonstrates that the "hurdle erected by th[e 'under color'] requirement is quite low"). To be sure, *Watson's* instruction is useful. But proper context demonstrates the limits of its usefulness in considering a private health-insurance contractor.

With the rules of interpretation clarified, we turn to Humana's argument. As *Watson* makes clear, a private firm does not "act under" a federal officer simply because its activities are directed, supervised, and monitored by an agency. Detailed regulation, monitoring, or supervision of a *contractor*, however, may signify a relationship "unusually close" enough to "establish the type of formal delegation" that falls within § 1442(a). *Watson*, 551 U.S. at 153, 156, 127 S.Ct. 2301. The question is where that line is drawn. For reasons that follow, we hold that the relationship between CMS and MAOs is not

so unusually close that Humana may wield the officer-removal statute.

Normally, when federal agencies delegate legal authority to private entities, they do so expressly. *Id.* at 157, 127 S.Ct. 2301. That's the case with Medicare Part B. For efficiency, the Secretary of the Department of Health and Human Services (HHS) is authorized to contract with private health insurers—"[M]edicare administrative contractors" in CMS parlance—to administer payment of Part B claims. *See* 42 U.S.C. § 1395u. Under this fee-for-service arrangement, the Secretary pays the cost of claims administration. In return, the insurers "act on behalf of CMS," 42 C.F.R. § 421.5(b), as "the Secretary's agents," *Schweiker v. McClure,* 456 U.S. 188, 190, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982). CMS even indemnifies the insurers with respect to those duties. 42 C.F.R. § 421.5(b).

CMS's relationship with MAOs works differently. Congress created Medicare Advantage in the hope that the private sector would make delivering Medicare benefits cheaper and more efficient. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.,* 685 F.3d 353, 363 (3d Cir. 2012). CMS sets per-beneficiary rates, 42 C.F.R. § 422.306, and MAOs profit by providing care at a cost lower than the value of those government payments. Because larger insurance pools are less susceptible to adverse selection, *King v. Burwell,* — U.S. —, 135 S.Ct. 2480, 2485–86, 192 L.Ed.2d 483 (2015), MAOs have an incentive to maximize enrollment. It therefore makes good policy sense that so long as they provide the same "benefits" available through "original [M]edicare," 42 U.S.C. § 1395w–22(a)(1)(A), MAOs can design MA plans as they see fit. For example, MAOs have free rein to decide: the network of providers with whom they contract, 42 C.F.R. § 422.4; the benefits to

provide enrollees beyond traditional Medicare, *id.* § 422.102(b); the out-of-pocket costs that they charge enrollees, *id.* § 422.111(f)(5); and the care that enrollees can obtain from out-of-network providers, *ibid.* MAOs do not regularly update CMS on their enrollees' claims and benefits. *See id.* § 422.310. In fact, they are required to attempt to resolve benefits disputes before MA plan enrollees resort to administrative review. *Id.* § 422.562. In short, MAOs have an arms-length relationship with CMS.

Of course, MAOs are still subject to extensive regulatory requirements. But their autonomy to "utilize innovations [of] the private market" in MA plan design and implementation indicates that MAOs are not closely supervised or controlled by CMS. H.R.Rep. No. 105–217, at 585 (1997) (Conf. Rep.); *cf. Cabalce v. Thomas E. Blanchard & Assocs., Inc.,* 797 F.3d 720, 728 (9th Cir.2015). CMS recognizes as much: Part C has no analogue to 42 C.F.R. § 421.5(b) permitting MAOs to "act on [its] behalf." *Cf. Zanecki v. Health All. Plan of Detroit,* 577 Fed.Appx. 394, 397–98 (6th Cir.2014) (CMS lacks authority to manage "detailed physical performance" or control "day-to-day operations" of MAOs).

A contractor may be more likely to act under a federal officer if it takes on a job that the government would otherwise have to do. The *Watson* Court credited (albeit tepidly) the Fifth Circuit's holding in *Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387 (5th Cir.1998), that Dow Chemical fell within the ambit of § 1442(a) when it produced Agent Orange for the federal government. "[A]t least arguably," *Watson* posited, "Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." 551 U.S. at 154, 127 S.Ct. 2301. But do MAOs perform a job that the government would have to perform itself if it did not contract with pri-

vate firms? We think not. If no health insurer chose to contract with CMS as an MAO, it is doubtful that the government would get into the business of offering its own MA plans. It certainly doesn't *have* to. More likely, it would fall back on traditional fee-for-service Medicare—which it must provide regardless. *See* 42 U.S.C. §§ 426(a), 1395c. Contrast Humana's situation with that of contractors performing tasks that the government would otherwise have to use its own agents to complete. *E.g. Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1233 (8th Cir.2012) (providing health care to federal employees); *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir.2012) (building naval warships); *Bennett*, 607 F.3d at 1087–88 (removing mold from air-traffic-control towers); *Lay v. Burley Stabilization Corp.*, 312 Fed.Appx. 752, 761 (6th Cir.2009) (Moore, J., concurring) (collecting assessments and remitting gains from loan-pool tobacco sales).

Humana also relies on the argument that its contract with CMS subjects it to particularly detailed regulation. But that alone does not bring a private firm within the scope of § 1442(a). *Watson*, 551 U.S. at 145, 127 S.Ct. 2301. Nor does CMS confer on MAOs "a power to make rules, as opposed to interpret and apply them as best it can." *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 810 (7th Cir.2015). And as discussed above, we disagree that "all facets" of the MAO relationship with noncontract providers are dictated by CMS regulation. However regulated MAOs may be, they operate at a distance from CMS.

Several lower courts have reached the opposite conclusion. Most did not engage with the question whether the MAO relationship to the federal government is akin to a delegation. *See Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F.Supp.3d 1388, 1391 (S.D.Fla.2014);

*Rudek v. Presence Our Lady of Resurrection Med. Ctr.*, No. 13 C 06022, 2014 WL 5441845, at *1 & n. 1 (N.D.Ill. Oct. 27, 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F.Supp.3d 1268, 1270 (S.D.Fla. 2014); *Mann v. Reeder*, No. 1:10–CV–00133, 2010 WL 5341934, at *2 (W.D.Ky. Dec. 21, 2010). Two have considered the question, but failed to also consider whether the relationship between CMS and an MAO is unusually close. *Beaumont Foot Specialists, Inc. v. United Healthcare of Tex., Inc.*, 2015 WL 9257026, at *4 (E.D.Tex. Dec. 14, 2015); *Woodruff v. Humana Pharmacy Inc.*, 65 F.Supp.3d 588, 590–91 (N.D.Ill.2014). We are not convinced that the regulation, supervision, and control to which Humana is subject connote the sort of unusually close relationship necessary for a private contractor to "act under" a federal agency.

Our analysis could end here. It bears emphasis, however, that even if we held that Humana did "act under" CMS, it would face an additional hurdle: establishing that withholding the alleged overpayments was "under color of such office." Before 2011, a defendant invoking § 1442(a) had to demonstrate that the subject of the complaint was "for any act under color of office." In other words, he had to "show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (quotation marks omitted). The Removal Clarification Act of 2011, Pub. L. No. 112–51, § 2, 125 Stat. 545, added "or relating to" after "for" in § 1442(a), which now reads: "for *or relating to* any act under color of office." The addition was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." H.R.Rep. No. 112–17, pt. 1, at 6 (2011).

However, the more expansive language should not be read so broadly that it ren-

ders the "acting under" requirement superfluous. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001). To remove a case through § 1442(a), a private individual must be "acting under" a federal officer. That condition is distinct from the requirement that the alleged conduct be "for or relating to any act under color" of federal office. *See, e.g., Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172–73 (5th Cir.2015). Just as a "federal officer could not remove a trespass suit that occurred while he was taking out the garbage," *Ruppel*, 701 F.3d at 1181, a contractor acting under a federal officer could not remove a suit solely on the ground that but for the contract, it would not have interacted with the plaintiff.

An MAO defendant's conduct is less likely to relate to action taken under color of federal office when the plaintiff does not need to exhaust the Medicare Act's administrative-review process before bringing suit. When a claim is "inextricably intertwined" with a demand for Medicare benefits, a final agency decision must precede judicial review. *Heckler v. Ringer*, 466 U.S. 602, 624, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (citing 42 U.S.C. § 405(g), (h)); *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir.2000). As discussed, MAOs must have internal procedures for making "organization determinations" regarding whether MA plan enrollees are "entitled to receive a health service." 42 U.S.C. § 1395w–22(g)(1)(A); *see* 42 C.F.R. § 422.566.

Bosman failed to exhaust administrative remedies, Humana contends, because non-contract providers must seek administrative review before contesting organization determinations in federal court. Although we need not resolve the question, Humana's argument is dubious. At its core, Bosman's claim arises from a private billing dispute. No beneficiary was denied Medicare benefits or reimbursement. Nor do the parties contest whether Medicare covers the chiropractic services that Bosman provided—they agree that it does. Any dispute over payment is solely between Bosman and Humana. *Cf. RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 559 (5th Cir. 2004). In any event, we leave the question for a state court with jurisdiction to hear this suit.

### III

The district court lacked subject-matter jurisdiction over the action. We therefore REVERSE and REMAND with instructions that the district court remand this case to the state court from which it was removed.