NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0464n.06

Case No. 24-1085

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY, et al., | ) ) ) ) | **FILED**<br>Nov 22, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY, | ) ) ) | OPINION |
| Defendant-Appellant. | ) ) ) | |

Before: SILER, GRIFFIN, and MATHIS, Circuit Judges.

**SILER, Circuit Judge.** This case arises from claims by the Michigan Department of Environment, Great Lakes, and Energy ("EGLE") and Attorney General Dana Nessel (collectively, "State Parties") against the Gerald R. Ford International Airport Authority ("Airport Authority") for alleged environmental contamination. The State Parties assert that the Airport Authority's use of Aqueous Film-Forming Foam ("AFFF"), a firefighting agent containing per- and polyfluoroalkyl substances ("PFAS"), led to contamination of the surrounding environment in violation of Michigan's Natural Resources and Environmental Protection Act ("NREPA"). The Airport Authority removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), arguing that it acted "under" the Federal Aviation Administration ("FAA"), which mandates the use of AFFF for certified airports. The district court granted the State Parties'

motion to remand, finding that the Airport Authority's compliance with FAA regulations did not meet the "acting under" requirement necessary for federal officer removal. For the reasons below, we AFFIRM the district court's remand order.

## I.

The Airport Authority, a Michigan corporation, owns and operates the Gerald R. Ford International Airport in Grand Rapids, Michigan. Formed under Michigan's Regional Airport Authority Act, the Airport Authority manages the Airport's operations, including compliance with federal, state, and local regulations.

In September 2023, the State Parties filed a two-count complaint in the 17th Circuit Court for Kent County, Michigan. They alleged violations of Michigan's NREPA (Mich. Comp. Laws § 324.101 *et seq.*), citing the Airport Authority's use of AFFF containing PFAS during firefighting training, equipment testing, and emergency responses. The complaint asserts that the use of AFFF contaminated soil and groundwater at and near the Airport, impacting residential areas and exceeding EGLE's cleanup criteria. Count I seeks relief under Part 201 of NREPA, holding the Airport Authority liable for the release of hazardous substances as the owner and operator of the site. Count II alleges violations under Part 31 of NREPA for stormwater discharges exceeding effluent limits, contributing to water pollution.

In October 2023, the Airport Authority removed the case to the U.S. District Court for the Western District of Michigan, asserting federal jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The Airport Authority argued that it was "acting under" a federal officer because, as a certified public airport under 14 C.F.R. Part 139, it must comply with FAA regulations mandating the use of AFFF that contains PFAS.

In November 2023, the State Parties moved to remand, contending that the Airport Authority did not satisfy any of the three requirements for federal officer removal under § 1442(a)(1). They argued that merely following FAA regulations does not equate to "acting under" a federal officer. They also contended that while the FAA mandates AFFF use for certain activities, it does not control how the Airport Authority manages or disposes of PFAS, nor does it direct the specific actions that allegedly caused contamination. The district court granted the motion to remand, finding that the Airport Authority failed to demonstrate that it was "acting under" a federal officer. The court noted that mere compliance with federal regulations does not satisfy the "acting under" requirement for removal under § 1442(a)(1).

In December 2023, the Airport Authority filed a motion for reconsideration, presenting additional information on FAA regulations and federal funding. It argued that the federal grant funding it received further demonstrated its subordinance to federal authority. The district court denied the motion, stating that the new information did not change the fundamental nature of the Airport Authority's relationship with the FAA, which remained regulatory rather than supervisory. The Airport Authority timely appealed.

## II.

We review de novo a district court's determination that it lacked subject-matter jurisdiction, including its decision to remand under 28 U.S.C. § 1442(a)(1). *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007)). The Airport Authority, as the removing party, "bears the burden of establishing federal jurisdiction." *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 369 (6th Cir. 2014) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). As this case involves a facial attack on subject-matter jurisdiction, we accept the

allegations in the notice of removal and complaint as true unless contradicted by undisputed facts in the record. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Although we must liberally construe § 1442, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), we resolve all doubts against removal, *May*, 871 F.3d at 442.

To qualify for removal under § 1442(a)(1), a party that is not a federal officer must satisfy three requirements: (1) it was "act[ing] under a federal officer," (2) the actions were taken "under color of federal office," and (3) it "raise[s] a colorable federal defense." *Mays*, 871 F.3d at 442–43 (citing *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010)). Here, we address only the first requirement—whether the Airport Authority was "acting under" a federal officer—because the failure to meet this threshold element renders the remaining analysis unnecessary.

The term "acting under" is not defined in § 1442(a)(1), but the Supreme Court has provided guidance. The term "acting under" involves a relationship where the party is under the "subjection, guidance, or control" of a federal officer and is assisting or helping carry out "the duties or tasks of the federal superior." *Watson*, 551 U.S. at 151–52 (citation omitted). The Supreme Court has emphasized that "simply *complying* with the law" or following regulations does not by itself equate to "acting under" a federal officer for purposes of removal. *Id.* at 152.

The Airport Authority advances three primary arguments to establish that it was "acting under" a federal officer: compliance with FAA regulations mandates the use of AFFF-containing PFAS; it assists the FAA in fulfilling federal duties related to aviation safety and firefighting; and its participation in federal grant programs creates a contractual relationship with the federal government. We address each argument in turn.

### A.

The Airport Authority argues that it was "acting under" the FAA because FAA regulations mandated its use of AFFF containing PFAS, and noncompliance would jeopardize its Airport Operating Certificate. Specifically, the Airport Authority points to 14 C.F.R. §§ 139.317 and 139.319, which require certified airports to maintain certain quantities of firefighting agents meeting military specifications, including AFFF containing PFAS.

However, compliance with federal regulations—even when mandatory and detailed—does not satisfy the "acting under" requirement. In *Watson*, the Supreme Court held that a private company was not "acting under" a federal officer despite being subject to detailed rules or strict supervision and monitoring. 551 U.S. at 153. The Court emphasized that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.*

Similarly, in *Mays*, we held that state officials did not "act under" a federal officer by implementing federally approved environmental plans under the Safe Drinking Water Act. 871 F.3d at 444–45. We noted that being subject to federal regulation or performing some functions that a government agency controls is not enough to transform a party into a federal officer or agent for purposes of removal. *Id.* at 445.

Here, the FAA's oversight of the Airport Authority is comparable to the EPA's regulation in *Mays*, representing a typical regulatory relationship rather than a deputization of federal duties. The FAA's regulations apply to all airports seeking certification under Part 139. The Airport Authority's compliance with these regulations constitutes adherence to a regulatory scheme applicable industry-wide, not assistance to a federal officer in carrying out a federal duty. Therefore, mere compliance with FAA regulations does not establish that the Airport Authority was "acting under" a federal officer.

**B.**

The Airport Authority contends that it helps the FAA fulfil federal duties related to aviation safety and firefighting due to the FAA's detailed supervision and control over its operations. It argues that this level of federal oversight establishes the necessary "subjection, guidance, or control" to satisfy the "acting under" requirement.

In support, the Airport Authority relies on *Bennett v. MIS Corp.*, where we held that a contractor was "acting under" a federal officer because it was hired by the FAA to perform services under direct supervision. 607 F.3d at 1087–88. In *Bennett*, the contractor was hired by the FAA to perform mold remediation services under direct supervision, effectively acting as an agent of the federal government. *Id.* The contractor had a contractual relationship with the FAA and performed tasks on the FAA's behalf under its close direction. *Id.* The FAA exercised significant control over the contractor's operations, including the authority to dismiss employees. *Id.*

In contrast, the Airport Authority operates the Airport as a local entity and complies with FAA regulations applicable to all airports. There is no contractual relationship or delegation of federal duties akin to that in *Bennett*. The FAA does not direct the Airport Authority's day-to-day operations or exercise control over its employees.

Furthermore, firefighting services are traditionally local or state functions, not federal ones. Firefighting, including training and equipment testing, falls squarely within the realm of state and local responsibility. *Cf. In re Commerce Oil Co.*, 847 F.2d 291, 295–96 (6th Cir. 1988) (explaining that the state has "police power" over actions that affect public safety, welfare, and resources). The FAA's role is regulatory, setting safety standards that airports must meet to operate, but it does not delegate federal firefighting responsibilities to airports. The Airport Authority's use of

AFFF containing PFAS was mandated by FAA regulations applicable to all certificated airports, not as part of a delegation of federal duties.

In *Watson*, the Supreme Court stated that "differences in the degree of regulatory detail or supervision cannot by themselves transform . . . regulatory compliance into the kind of assistance that might bring [a private person] within the scope of the statutory phrase 'acting under' a federal 'officer.'" 551 U.S. at 157. Similarly, in *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, we held that detailed regulation and supervision by a federal agency did not establish that a private entity was "acting under" a federal officer. 647 F. App'x 619, 622–23 (6th Cir. 2016).

Therefore, the FAA's detailed regulations and oversight do not, without more, establish that the Airport Authority was "acting under" a federal officer. The Airport Authority retains control over its operations and is responsible for complying with environmental laws and regulations beyond those imposed by the FAA.

## C.

The Airport Authority contends that its participation in FAA grant programs, such as the Airport Improvement Program ("AIP"), creates a contractual relationship that satisfies the "acting under" requirement. It argues that the grant assurances obligate it to comply with FAA regulations, thereby establishing a closer nexus to federal officers.

However, the Airport Authority did not make this argument in its notice of removal or in its response to the motion to remand, so it is therefore not properly before us on appeal. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991).

Even if we consider this argument, it does not alter the outcome. This court in *Mays* made clear that receipt of federal funds tied to regulatory compliance does not constitute "acting under" a federal officer. *Mays*, 871 F.3d at 444–45, 447. The FAA's AIP grants, intended to support

7

airport infrastructure, do not create a contractual or supervisory relationship where the Airport Authority acts on behalf of the FAA. Title 31 U.S.C. § 6304 distinguishes grants from procurement contracts, underscoring that grants are used to support public purposes rather than procure services directly for the federal government. The Airport Authority's receipt of federal grant funds tied to regulatory compliance does not establish the type of delegation of authority or direct assistance to a federal officer required under § 1442(a)(1). *See Mays*, 871 F.3d at 444–45.

## III.

For the foregoing reasons, we AFFIRM the district court's order remanding the case to state court.